

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-14-2006

# USA v. Mitchell

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-2142

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"USA v. Mitchell" (2006). *2006 Decisions.* Paper 1435.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1435

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 05-2142

_____

UNITED STATES OF AMERICA

v.

TAUCHI MITCHELL
a/k/a
Tauhshi Mitchell
a/k/a
Star

Tauchi Mitchell,

<u>Appellant</u>

_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. Crim. No. 03-00021-1)
Honorable Sue L. Robinson, District Judge

_____

Submitted under Third Circuit LAR 34.1(a)
March 6, 2006

BEFORE:  ROTH and GREENBERG, <u>Circuit</u> <u>Judges</u>, and
BUCKWALTER, <u>District</u> <u>Judge</u>*

(Filed: March 14, 2006)

_____

*Honorable Ronald L. Buckwalter, Senior Judge of the United States District Court for
the Eastern District of Pennsylvania, sitting by designation.

OPINION OF THE COURT

GREENBERG, Circuit Judge.

This matter comes on before the court on an appeal by Tauchi Mitchell from a conviction and sentence entered on April 5, 2005, on a single-count indictment charging him with possession of ammunition while being a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). After a jury convicted Mitchell, the district court sentenced him to a 47-month custodial term to be followed by a 36-month term of supervised release. The district court had jurisdiction under 18 U.S.C. § 3231 and we have jurisdiction under 28 U.S.C. § 1291.

Mitchell, who is a convicted felon, raises three issues on this appeal: (1) the police's original warrantless entry into the premises at 528 N. Monroe Street, Wilmington, Delaware, at which Mitchell resided at the time of their entry, where they later found the ammunition after they obtained a search warrant for the premises, was unlawful as they did not have probable cause for the entry and there were no extant exigent circumstances justifying it; (2) the subsequent search of the premises pursuant to a search warrant during which the police found the ammunition was unlawful as the justice of the peace issuing the warrant relied on illegally obtained evidence described in the affidavit on which the warrant was predicated and the affiant executed the affidavit with a reckless disregard of the truth of its assertions; (3) the justice of the peace issued

2

the warrant on the basis of a false material assertion; and (4) the district court erred in not admitting into evidence Mitchell's uncle's statement claiming possession of the ammunition.

The basic circumstances leading to the indictment and conviction are not in dispute. On October 1, 2002, Artese Williams found Lisa Ferguson who had been shot in the 500 block of North Monroe Street in Wilmington, and took her to the Wilmington Hospital. Following the reporting of the incident, the police went to the area where Williams indicated that she found Ferguson. At that time and place, the police found a drop of blood on the sidewalk and another drop of blood on the front steps of the premises at 528 N. Monroe Street where Mitchell lived. These discoveries led the police to knock on the front door at 528 N. Monroe Street to ascertain if anyone inside had been shot. When the police knocked on the door, which apparently was not secured, it opened and they saw blood inside the premises. The premises, however, were empty of people. During this warrantless entry the police did not find any ammunition.

Thereafter, on the basis of an affidavit in which, in some places, the affiant police officer confused nearby North Madison Street with North Monroe Street, the police obtained a search warrant for the North Monroe Street address to search for evidence related to the shooting. When executing the warrant they found ammunition in the living/dining area and in Mitchell's bedroom.

Mitchell intended to call his uncle, Allen Fair, who also is a convicted felon, who

previously resided at 528 N. Monroe Street, as a witness at the trial to establish that the ammunition in the living/dining area may have been in Fair's possession. Fair, however, invoked the privilege against self incrimination and thus did not testify. Nevertheless, Mitchell attempted to introduce Fair's statement claiming possession of the ammunition into evidence as a statement against Fair's interest under Federal Rule of Evidence 804(b)(3). The court rejected the proffer because, using an objective standard, the court believed that the record did not establish that Fair knew that the statement was against his interest and, in any event, the court believed that the statement was not corroborated.

We reject all of Mitchell's arguments. First, there is no doubt that the police had a right and, indeed, a duty to go to the 500 block of North Monroe Street after receiving the report of the shooting. Then, when they saw blood on the sidewalk and on the front steps at 528 N. Monroe Street, in view of their knowledge that there had been a shooting in the area, they were justified if not compelled to enter the premises immediately as they had a basis to believe that someone in the premises might be in imminent danger. See Parkhurst v. Trapp, 77 F.3d 707, 711 (3d Cir. 1996). After all, they were aware of where Williams found Ferguson and that Ferguson had been shot, and it was logical for them to be concerned that there could be more victims. Moreover, the presence of blood on the front steps gave the police probable cause to believe that there would be evidence of the crime inside the premises, though this point is more significant with respect to the securing of the warrant than the initial entry. Of course, the police's observation of the

4

blood in the premises enhanced the basis for finding that there was probable cause to believe that there would be evidence of the crime in the premises. See Illinois v. Gates, 462 U.S. 213, 238, 106 S.Ct. 2317, 2332 (1983).

Second, even though the search warrant affidavit referred to a "blood trail" and the police found only drops of blood, the somewhat expansive characterization of what they found was not material because even the minimal amount of blood recovered pointed to 528 N. Monroe Street as the crime scene and thus supplied probable cause for issuing the warrant. See Wilson v. Russo, 212 F.3d 781, 789 (3d Cir. 2000). Third, the confusion between Madison and Monroe Streets in the affidavit, when the affidavit is considered in its entirety, does not undercut the reasonableness of the justice of the peace in issuing the search warrant for 528 N. Monroe Street. See United States v. Conley, 4 F.3d 1200, 1206 (3d Cir. 1993).

We believe that Mitchell's strongest argument relates to the exclusion of Fair's statement. But even this contention fails. Under Rule 804(b)(3), Mitchell had the burden to demonstrate that Fair's statement was "so far contrary to [his] pecuniary or proprietary interest or so tended to subject [him] to civil or criminal liability, . . . that a reasonable person in [his] position would not have made the statement unless believing it to be true." Here we are concerned with the penal prong of Rule 804(b)(3).

Initially on this point we are satisfied that Fair did not know that he was making a statement against his penal interest when he claimed possession of some of the

5

ammunition involved in this case because he did not know that it was unlawful for him to possess the ammunition. That circumstance, however, does not complete our Rule 804(b)(3) inquiry for, as Mitchell emphasizes, the Rule 804(b)(3) standard is objective so that Fair's lack of knowledge that his possession of ammunition was illegal is not controlling. But use of the objective standard does not help Mitchell because the district court did not believe that a reasonable person convicted of a felony would realize that he could not possess ammunition lawfully. We agree with the court's conclusion in this regard for, as it indicated, a court at a plea colloquy ordinarily does not warn a felon that he cannot possess ammunition. Rather, the courts advise convicted defendants that they should not have weapons. Furthermore, prosecutions of convicted felons for possession solely of ammunition, such as that here, are unusual. Finally we point out that in at least some criminal judgments used in district courts the conditions of supervised release recite that "[t]he defendant shall not possess a firearm, destructive device, or any other dangerous weapon." While we do not know what the judgment in Fair's case set forth we note that in Mitchell's case the judgment included this condition without mentioning ammunition.

In reaching our conclusion we have not overlooked Mitchell's argument that "any assertion that [Fair] was unaware of the consequences of his statement would be irrelevant in determining whether his statement was indictive of criminal culpability." Appellant's br. at 28. Indeed, we accept that statement as correct. The problem with the

6

argument, however, is that we are not concerned with the use of the statement in a prosecution of Fair as his admission.  Instead, we are considering the statement's use under Rule 804(b)(3), which does not deal solely with what the law is but rather with the mental state of a "reasonable person."[1]

For the foregoing reasons the judgment of conviction and sentence entered April 5, 2005, will be affirmed.

---

[1]In view of our conclusions we do not consider certain other bases that the government has advanced for upholding the rejection of Fair's statement.