FILED
United States Court of Appeals
Tenth Circuit

January 20, 2015

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

No. 14-1094

GREGORY LOZADO,

      Defendant - Appellant.

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 1:13-CR-00151-PAB-1)**

Submitted on the briefs:[*]

Antony M. Noble, The Noble Law Firm, LLC, Lakewood, Colorado, for Appellant.

Stephanie N. Gaddy, Special Assistant United States Attorney (John F. Walsh, United States Attorney, with her on the brief), Office of the United States Attorney for the District of Colorado, Denver, Colorado, for Appellee.

Before **HARTZ**, **MATHESON**, and **MORITZ**, Circuit Judges.

**MATHESON**, Circuit Judge.

---

    [*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

At his jury trial for being a felon in possession of ammunition in violation of 18 U.S.C. § 922(g)(1), Gregory Lozado asked the district court to admit a hearsay statement from his brother-in-law, Novelle Farris, claiming ownership of the ammunition. The court excluded the statement because it did not meet the hearsay exception requirements of Federal Rule of Evidence 804(b)(3) for a statement against interest. The jury convicted Mr. Lozado. The court sentenced him to prison for 235 months.

Mr. Lozado now appeals. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. BACKGROUND

### A. *Legal Background*

The sole issue in this appeal concerns application of the hearsay exception for statements against interest. We provide a brief overview of this exception here to place in legal context the ensuing discussion of Mr. Lozado's stop, arrest, and search; Mr. Farris's statements; and the district court's rulings on the admissibility of those statements.

Hearsay is an out-of-court statement "offer[ed] in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). Hearsay is generally inadmissible as evidence because it is considered unreliable. *Williamson v. United States*, 512 U.S. 594, 598 (1994). The hearsay rule, however, is subject to exceptions.

One such exception is for statements against interest. Fed. R. Evid. 804(b)(3). To qualify as a statement against interest, a statement must have been made by a declarant considered unavailable as a witness. Fed. R. Evid. 804(a). A declarant is unavailable as

a witness if he or she "is exempted from testifying . . . because the court rules that a privilege applies," "refuses to testify," "testifies to not remembering the subject matter," "cannot be present . . . because of death or . . . illness," or is absent and the statement's proponent cannot procure the declarant's attendance. *Id.*

> A statement against interest made by an unavailable declarant is one that:
>
> (A) a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability; and
>
> (B) is supported by corroborating circumstances that clearly indicate its trustworthiness, if it is offered in a criminal case as one that tends to expose the declarant to criminal liability.

Fed. R. Evid. 804(b)(3). In sum, three prerequisites must be met to admit a hearsay statement in a criminal case that tends to expose a declarant to criminal liability: (1) an unavailable declarant, (2) a statement against the declarant's penal interest, and (3) sufficient corroborating circumstances that clearly indicate the trustworthiness of the statement. *See* Fed. R. Evid. 804; *United States v. Porter*, 881 F.2d 878, 882 (10th Cir. 1989).

B. ***Mr. Lozado's Stop, Arrest, and Search***

On March 21, 2013, Officers Sean Stevenson and Richard Eric Shurley of the Denver Police Department noticed someone driving a car with a cracked windshield and an expired, temporary Texas license plate. They followed the car and initiated a traffic stop. The driver, Mr. Lozado, stopped the car, immediately jumped out, and ran into his nearby apartment building. The officers saw what appeared to be a black handgun in Mr.

- 3 -

Lozado's right hand. After police surrounded the apartment building, Mr. Lozado surrendered.

Officer Stevenson confirmed the driver was Mr. Lozado and the car was registered in Mr. Lozado's name. Officer Stevenson then searched the car. He found a large plastic trash bag behind the driver's seat. It contained a small black purse. Inside the purse, Officer Stevenson found ten 9-millimeter bullets and a .38 caliber spent shell casing. Winchester made the bullets, which had brass shell casings. Also in the plastic trash bag, Officer Stevenson found pills, hallucinogenic mushrooms, a large sword with an ivory handle, a brown wallet containing Mr. Lozado's driver's license, and a small gum wrapper that Officer Stevenson suspected contained methamphetamine.

Officers also searched Mr. Lozado's apartment. They did not find a firearm but did find a bag containing hallucinogenic mushrooms, a twenty-dollar bill, and red pills under a cushion on the sofa. In a closet, an officer found a pair of shorts containing a 9-millimeter bullet, a .45 caliber bullet, a bag of white powder later determined to be cocaine base, and two envelopes. The bullets, not made by Winchester, had gray shell casings. The envelopes contained paystubs made out to Mr. Farris.

After being taken into custody, Mr. Lozado told Officer Adam Bechthold about a bag with 9-millimeter ammunition and some .38 caliber shell casings in the main compartment of his car, a plastic bag with hallucinogenic mushrooms and a single prescription pill in the center console, and a BB gun in the trunk. He also told Officer Bechthold what appeared to be the handgun he had been holding was actually a wax handgun, which he had broken up into four pieces and flushed down the toilet. Mr.

- 4 -

Lozado said he needed live ammunition to make the wax handgun and the BB gun look real.

Later at the police station, Mr. Lozado admitted the ammunition and drugs in the car and the hallucinogenic mushrooms, twenty-dollar bill, and pills in his sofa were his. But he did not take responsibility for the drugs found in Mr. Farris's shorts, saying instead that if Mr. Farris owned something, he "need[ed] to be a man and stand up and take his punishment." ROA, Vol. III at 726.

Police arrested Mr. Farris on the same day for possession of a controlled substance, but they released him without charges.

### C. *Mr. Farris's Interview*

On November 13, 2013, law enforcement agents interviewed Mr. Farris, assuring him they would not arrest him. In this interview, Mr. Farris stated the drugs and bullets found in the shorts and the bullets in the car belonged to him. He said he had purchased the ammunition a few days before Mr. Lozado's arrest and had borrowed Mr. Lozado's car to transport the bullets to his cousin's house. Mr. Farris said Mr. Lozado knew he had planned to take the ammunition to his cousin's house but did not know Mr. Farris had not yet removed the ammunition from the car when he was pulled over.

Mr. Farris said the ammunition was both 9-millimeter and .45 caliber and was boxed. When asked why, if he had just purchased it, the ammunition in the car was not found in a box, Mr. Farris said he had both loose and boxed ammunition and had left the former in the car. Mr. Farris described the ammunition in the car as the same type as that

found in his shorts.  He thought there were 40 to 50 bullets in the car.  He described the 9-millimeter ammunition as having gray shell casings with a copper tip.

Mr. Farris also admitted he was an illegal-drug user and had used drugs on the day of Mr. Lozado's arrest.  But throughout his interview, Mr. Farris said he had not done anything illegal or wrong.

### D.  *Indictment and Trial*

A grand jury returned a one-count indictment charging Mr. Lozado with possession of a firearm and ammunition by a felon in violation of 18 U.S.C. § 922(g)(1).

Mr. Lozado moved for admission of Mr. Farris's statements about the drugs and the ammunition under Rule 804(b)(3).  The Government moved to bar admission of the statements.  As to the ammunition, the Government argued (1) Mr. Farris had no idea possession of ammunition by an illegal-drug user is a crime, and (2) Mr. Lozado could not show corroborating circumstances indicating the trustworthiness of the statement.  The district court deferred its ruling until trial.

At trial, Mr. Lozado argued the statement about the ammunition was a statement against interest because 18 U.S.C. § 922(g)(3) makes it a crime for a user of illegal drugs, like Mr. Farris, to possess ammunition.  Mr. Lozado's counsel acknowledged he had not previously known about the statute and that Mr. Farris probably had not known about it either.

The district court first determined Mr. Farris was unavailable as a witness under Rule 804(a)(1) because he had properly invoked his Fifth Amendment privilege against self-incrimination.  It then ruled Mr. Farris's statement about the drugs in the shorts was

- 6 -

admissible because "a reasonable person would believe that that would tend to expose him to criminal liability." *Id.* at 781. The court further found corroborating circumstances confirmed the drugs were his because paystubs with Mr. Farris's name on them were also found in the shorts. This ruling is not at issue in this appeal.

The court also ruled the statement about ammunition was inadmissible because Mr. Lozado could not establish either Rule 804(b)(3) factor—that a reasonable person in Mr. Farris's position would have known his statement was incriminating, Fed. R. Evid. 804(b)(3)(A), or that circumstances corroborated the trustworthiness of the statement, Fed. R. Evid. 804(b)(3)(B).

First, the court held "a reasonable person in Mr. Farris's position would have [no] idea that his status as a drug user would have disabled him under federal law from possessing ammunition." ROA, Vol. III at 783. Invoking his experiences as a prosecutor and judge, the district court judge observed 18 U.S.C. § 922(g)(3) charges are rare. Further, the court noted it had "anecdotal information here that [Mr. Lozado's attorney] is an able and experienced criminal defense lawyer [who] was not aware of that particular charge." *Id.*

Second, noting inconsistencies between Mr. Farris's statements and the facts, the court found insufficient corroborating circumstances linking Mr. Farris to the ammunition.

On November 20, 2013, the jury returned a guilty verdict. It found Mr. Lozado possessed ammunition, but did not find that Mr. Lozado possessed a firearm. On March 12, 2014, the district court sentenced Mr. Lozado to 235 months in prison and five years

of supervised release. Mr. Lozado timely filed his notice of appeal on March 14, 2014. *See* Fed. R. App. P. 4(b)(1).

## II.  DISCUSSION

### A.  *Standard of Review*

We review a district court's decision to admit or exclude evidence for abuse of discretion. *United States v. Smalls*, 605 F.3d 765, 773 (10th Cir. 2010). "The need for deference to a [district] court ruling on a hearsay objection is particularly great because the determination of whether certain evidence is hearsay rests heavily upon the facts of a particular case." *United States v. Rodriguez-Pando*, 841 F.2d 1014, 1018 (10th Cir. 1988).

We can disturb a district court's evidentiary ruling, however, if there is "a distinct showing that it was based on a clearly erroneous finding of fact, or an erroneous conclusion of law or manifests a clear error in judgment." *Smalls*, 605 F.3d at 773 (quotations omitted). "A district court by definition abuses its discretion when it makes an error of law." *Koon v. United States*, 518 U.S. 81, 100 (1996).

### B.  *Analysis*

The parties disagree (1) whether Mr. Farris's statement about the ammunition was against his penal interest and (2) whether his statement was sufficiently corroborated.[1]

---

[1] As explained above, to admit a statement against interest, the declarant must also be unavailable. Fed. R. Evid. 804(a). A declarant is unavailable if the court determines a privilege applies. *Id.* The district court determined Mr. Farris was unavailable because he had asserted his Fifth Amendment privilege. The parties do not dispute the district court's unavailability determination.

We hold the district court did not abuse its discretion in finding (1) Mr. Farris's statement was not against his penal interest and (2) the circumstances did not corroborate the trustworthiness of the statement. As a result, we affirm the district court's decision to exclude Mr. Farris's statement.

1. **Statement Against Penal Interest**

A statement against interest is one that "a reasonable person in the declarant's position would have made only if the person believed it to be true." Fed. R. Evid. 804(b)(3)(A). It must be against the declarant's proprietary, pecuniary, or penal interest. *Id.* Statements against penal interest expose the declarant to criminal liability. *Williamson*, 512 U.S. at 599-600. "To be admissible under Rule 804(b)(3), a statement against penal interest must so far tend to subject the declarant to criminal liability that a reasonable man in his position would not have made the statement unless he believed it to be true." *United States v. Chalan*, 812 F.2d 1302, 1311 (10th Cir. 1987) (quotations omitted).

The parties disagree as to whether the declarant must be aware the statement was against penal interest. Mr. Lozado argues it is enough that Mr. Farris's statement in fact exposed him to criminal liability. He contends that although Mr. Farris may not have known his statement exposed him to criminal liability, and although a reasonable person in his position similarly may not have been aware, the fact Mr. Farris admitted he was an unlawful user of a controlled substance in possession of ammunition—a criminal offense under 18 U.S.C. § 922(g)(3)—alone satisfies Rule 804(b)(3)(A). The Government argues a statement is against a declarant's penal interest only when a reasonable person in the

- 9 -

declarant's position would know the statement is against his or her penal interest, and that is not the case here.

The district court agreed with the Government that Mr. Farris's statement was not against his penal interest under Rule 804(b)(3)(A). We reach the same conclusion by (a) exploring the rationale for the statement against interest hearsay exception, (b) explaining how evidence of the declarant's actual knowledge of whether the statement is against penal interest should be considered in Rule 804(b)(3)(A)'s "a reasonable person in the declarant's position" standard, and (c) analyzing Mr. Farris's statement.

a. *The rationale for Rule 804(b)(3)*

The statement against interest exception to the hearsay rule is based on the "commonsense notion that reasonable people, even reasonable people who are not especially honest, tend not to make self-inculpatory statements unless they believe them to be true." *Williamson*, 512 U.S. at 599. In other words, "[t]he circumstantial guarant[ee] of reliability for declarations against interest is the assumption that persons do not make statements which are damaging to themselves unless satisfied for good reason that they are true." Fed. R. Evid. 804 advisory committee notes; *see also* Emily F. Duck, *The* Williamson *Standard for the Exception to the Rule Against Hearsay for Statements Against Penal Interest*, 85 J. Crim. L. & Criminology 1084, 1086-87 (1995) (detailing the legislative history of Rule 804(b)(3), noting the drafters of Rule 804(b)(3) recognized "that exposure to punishment for crime was a sufficient guarantor of evidentiary reliability" (quotations omitted)). Without awareness that the statement could

have adverse consequences, the statement lacks circumstantial guarantees of trustworthiness.

Courts accordingly consider the statement in context and the circumstances under which it was made. *See, e.g.*, *Williamson*, 512 U.S. at 603 ("[S]tatements that are on their face neutral may actually be against the declarant's interest. . . . 'Sam and I went to Joe's house' might be against the declarant's interest if a reasonable person in the declarant's shoes *would realize* that being linked to Joe and Sam would implicate the declarant in Joe and Sam's conspiracy." (emphasis added)).

Under Mr. Lozado's interpretation, it would be unnecessary to consider context and circumstances; knowledge of the statement's incriminating nature would simply be presumed.[2] But the rationale for Rule 804(b)(3) calls for awareness the statement is self-inculpatory.[3]

---

[2] Mr. Lozado's reliance on the notion all people are presumed to know the law, *see, e.g.*, *Atkins v. Parker*, 472 U.S. 115, 130 (1985) ("All citizens are presumptively charged with knowledge of the law."), fails for at least two reasons. First, no court has applied this general concept to Rule 804(b)(3). It arises instead in cases where defendants attempt to use ignorance of the law as a defense. *See, e.g.*, *United States v. Cheeseman*, 600 F.3d 270, 281 (3d Cir. 2010) (noting ignorance of the law generally does not excuse illegal conduct). Second, applying this concept to Rule 804(b)(3) would undermine the Rule's rationale. As explained above, Rule 804(b)(3) requires awareness of the statement's self-inculpatory nature for circumstantial assurance the statement is truthful.

[3] Mr. Lozado's citations to *United States v. Jackson*, 334 F. App'x 900 (10th Cir. 2009) (unpublished), *United States v. Lopez-Garcia*, 194 F.3d 1321 (10th Cir. 1999) (unpublished table opinion), and *United States v. Elkins*, 70 F.3d 81 (10th Cir. 1995) are also misplaced. In determining that the declarants in those cases made statements against interest, this court did not address whether the declarants were aware of the self-inculpatory nature of their statements or whether a reasonable person would have been

- 11 -

b. *Actual knowledge as to whether the statement is against penal interest and "a reasonable person in the declarant's position"*

Rule 804(b)(3)(A) mandates that courts consider the awareness of "a reasonable person in the declarant's position." Fed. R. Evid. 804(b)(3)(A). But how does this standard take into account cases in which the evidence establishes the declarant's actual knowledge as to whether a statement is self-incriminating?

As we explain below, the actual knowledge of the declarant, when the evidence establishes it, is part of the "reasonable person in the declarant's position" calculus. The reasonable person standard also applies when proof of the declarant's state of mind is lacking.[4]

---

aware. *Jackson*, 334 F. App'x at 909; *Lopez-Garcia*, 194 F.3d at *3; *Elkins*, 70 F.3d at 83.

Mr. Lozado's reliance on *United States v. Lieberman*, 637 F.2d 95 (2d Cir. 1980), and *United States v. Lang*, 589 F.2d 92 (2d Cir. 1978), is also unavailing. In these cases, the Second Circuit acknowledged the declarants "may not have realized that [they were] subjecting [themselves] to criminal liability" because they believed they were making their statements to *friends*. *Lieberman*, 637 F.2d at 103-04; *see Lang*, 589 F.2d at 97. But this was not the relevant inquiry. Instead, in admitting these statements, the Second Circuit noted:

> The Rule does not require that the declarant be aware that the incriminating statement subjects him to immediate criminal prosecution. Rather, it simply requires that the incriminating statement sufficiently tended to subject the declarant to criminal liability so that a reasonable man in his position would not have made the statement unless he believed it to be true.

*Lang*, 589 F.2d at 97 (quotations omitted).

[4] The following discussion focuses on the declarant's awareness of whether the statement is against penal interest. Even if a declarant actually knew or a reasonable person in the declarant's position would have known the statement is against penal interest, the statement should not be admitted if the declarant knowingly lied. The common law long resisted admission of statements against penal interest based on the

i. <u>Reasonable person and evidence of actual knowledge as to whether the statement is against penal interest</u>

The declarant's actual knowledge that a statement is self-incriminating tends to meet the Rule's rationale for circumstantial assurance of truth. "[T]he declarant must have understood the statement to be against his interests. Without this consciousness prong, the declarant would lack adequate basis for making a reasonable determination, thus eradicating the statement's reliability. . . . The traditional approach has required apparent awareness by the declarant that the statement was contrary to his interests." John P. Cronan, *Do Statements Against Interests Exist? A Critique of the Reliability of Federal Rule of Evidence 804(b)(3) and a Proposed Reformulation*, 33 Seton Hall L. Rev. 1, 13 (2002); *see* Bernard S. Jefferson, *Declarations Against Interest: An Exception to the Hearsay Rule*, 58 Harv. L. Rev. 1, 17 (1944) ("[I]t is not the fact that the

concern that unavailable declarants will lie "despite the consequences to themselves to exculpate those they love or fear." 5 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 804.06[1], at 804-52 (Joseph M. McLaughlin ed., 2d ed. 2014); *see* Fed. R. Evid. 804 advisory committee notes. "[T]he danger exists that liars, crackpots and publicity seekers will confess to acts they never committed." 5 Weinstein & Berger, § 804.06[4][c], at 804-56.

The corroboration requirement embodied in Rule 804(b)(3)(B) was added to "effect an accommodation" between admitting declarations against penal interest and "distrust of evidence of confessions by third parties offered to exculpate the accused." Fed. R. Evid. 804 advisory committee notes. When there is proof the declarant knowingly lied in making the statement against penal interest, the statement would almost certainly be excluded for lacking corroboration of its trustworthiness. It also could be excluded on other grounds. For example, under Rule 804(b)(3)(A), if the phrase "in the declarant's position" captures the declarant's knowledge of the statement's falsity, the statement is not one "a reasonable person . . . would have made only if the person believed it to be true." Also, the statement probably would be excluded under Rule 403 (or perhaps even Rule 401) as having no probative value. *See* 5 Weinstein & Berger, § 804.06[4][c], at 804-56 & n.15.

- 13 -

declaration is against interest but the awareness of that fact by the declarant which gives the statement significance.").

Crediting the declarant's actual knowledge of the statement's self-inculpatory nature is compatible with the Rule's text. Rule 804(b)(3)(A) calls on courts to assess whether a statement is against interest from the standpoint of "a reasonable person in the declarant's position." Fed. R. Evid. 804(b)(3)(A). If there is proof of the declarant's actual knowledge, "a reasonable person in the declarant's position" would have the declarant's actual knowledge. And consideration of the declarant's actual awareness of whether the statement is self-incriminating would be consistent with our obligation to consider all the surrounding circumstances and context of the statement. *See Williamson*, 512 U.S. at 603-04 (stating the question of whether a statement is against a declarant's penal interest "can only be answered in light of all the surrounding circumstances"); Glen Weissenberger, *Federal Rules of Evidence 804: Admissible Hearsay from an Unavailable Declarant*, 55 U. Cin. L. Rev. 1079, 1121 (1987) ("The 'in his position' language clearly reflects an intent to include the surrounding circumstances and factual context of the statement in the evaluation of whether the statement is contrary to the declarant's interest.").[5]

---

[5] Indeed, this court's application of the reasonable person standard in other contexts supports our understanding of the "reasonable person in the declarant's position" language in Rule 804(b)(3)(A). *See West Coast Life Ins. Co. v. Hoar*, 558 F.3d 1151, 1157-59 (10th Cir. 2009) (considering a person's actual knowledge of the risks of heli-skiing when determining "whether a reasonable person, with the [person's] physical or mental characteristics, under all the circumstances" would have understood the need to disclose heli-skiing in a life insurance application) (quotations omitted); *Weigel v. Broad*, 544 F.3d 1143, 1152 (10th Cir. 2008) (stating the assessment of a reasonable officer

- 14 -

Our cases applying the Rule 804(b)(3)(A) standard recognize that a statement from a declarant who is subjectively aware the statement is self-inculpatory can qualify as a statement against interest. *See Crespin v. New Mexico*, 144 F.3d 641, 647 (10th Cir. 1998) (approving of a state court's finding that the declarant subjected herself to some liability because the declarant "knew her conduct was wrong" (quotations omitted)); *Jennings v. Maynard*, 946 F.2d 1502, 1506 (10th Cir. 1991) (rejecting the argument the declarant "did not believe that his statement to [an investigating agent] would subject him to criminal liability and, therefore, is not a statement against interest" because, in part, the agent "warned [the declarant] that he could be subject to criminal liability and read [the declarant] his Miranda rights").

Other courts have upheld the exclusion of statements when evidence showed the declarant did not believe the statement was against penal interest. *See United States v. Two Shields*, 497 F.3d 789, 793 (8th Cir. 2007) (declining to admit a declarant's "head shake" as a statement against interest because the declarant was so intoxicated that "he could not have been able to appreciate that the statement was against his interest"); *United States v. Zirpolo*, 704 F.2d 23, 27 (1st Cir. 1983) (holding an affidavit could not

includes "examination of the information possessed by the officers" (quotations and alteration omitted)); *Harsco Corp. v. Renner*, 475 F.3d 1179, 1187 (10th Cir. 2007) (assessing whether workplace harassment rose to the level of "objective severity" from "the perspective of a reasonable person in the plaintiff's position, considering all the circumstances," which include the victim's subjective perception of the environment (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22 (1993))); *see also United States v. Garcia*, 751 F.3d 1139, 1143 (10th Cir. 2014) (stating the reasonable suspicion standard for *Terry* stops "looks at the officer's knowledge and observations as well as the circumstances in which the officer is working").

- 15 -

be admitted under Rule 804(b)(3) because the declarant signed it without a full

understanding that it was against his interest to sign the document).[6]

Thus, evidence establishing the declarant's actual knowledge as to whether the

statement is against penal interest should be attributed to "a reasonable person in the

declarant's position." But without such evidence, as is often the case, a court must

determine what "a reasonable person in the declarant's position" would know, which we

turn to next. *See* 2 McCormick on Evidence § 319 (Kenneth S. Broun ed., 7th ed. 2013)

("The usual standard is that found in Federal Evidence Rule 804(b)(3)(A): 'a reasonable

person in the declarant's position would have made only if the person believed it to be

---

[6] Some courts have required proof the declarant was subjectively aware of the danger to his or her interests. *See Roberts v. City of Troy*, 773 F.2d 720, 725-26 (6th Cir. 1985) ("Hearsay under the declaration against interest exception is unreliable unless the declarant is aware at the time of making the statement that it is against his interest."); *In re Japanese Elec. Prods. Antitrust Litig.*, 723 F.2d 238, 299-300 (3d Cir. 1983) (holding the district court did not clearly err when it refused to admit a statement as one against penal interest because the "plaintiffs have made no showing from which we could infer that any of the declarants were conscious that the statements were against their personal interests" (quotations omitted)), *rev'd on other grounds sub nom. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).

Some commentators agree. *See, e.g.*, 12A John Bourdeau et al., Federal Procedure, Lawyers Ed. § 33:495 (2014) ("Although the Rule does not expressly incorporate a requirement that the declarant have personal knowledge of the facts to which the statement relates, such a requirement of firsthand knowledge has always been inherent in the statement against interest exception. In addition, for the statement to be admissible the declarant must have a conscious understanding that the statement is against his or her interest when he or she makes it."); Note, *Declarations Against Penal Interest: Standards of Admissibility Under an Emerging Majority Rule*, 56 B.U. L. Rev. 148, 163-65 (1976).

We refuse to go this far, however, because the Rule permits consideration of what "a reasonable person in the declarant's position" would know given that evidence of the actual state of mind of an unavailable declarant often is lacking. We explore this further below.

true.' Difficulties of proof, probabilities, and the unavailability of the declarant all favor

the accepted standard. However, statements of a declarant disclosing his or her

ostensible actual mental state should certainly be received and should control in an

appropriate case."); Peter W. Tague, *Perils of the Rulemaking Process: The*

*Development, Application, and Unconstitutionality of Rule 804(b)(3)'s Penal Interest*

*Exception*, 69 Geo. L.J. 851, 935 (1981) ("[R]ule 804(b)(3) does not forbid a court from

investigating the declarant's subjective understanding of his statement. Thus, a court

should consider what the declarant thought when evidence of his understanding exists.").[7]

        ii. <u>Reasonable person and no evidence of actual knowledge as to whether the statement is against penal interest</u>

When, as is often the case, the declarant's belief about the self-inculpatory nature

of the statement is unknown, Rule 804(b)(3)(A) requires a determination of whether "a

reasonable person in the declarant's position would have . . . believed [the statement] to

be true." Fed. R. Evid. 804(b)(3)(A). "The Advisory Committee apparently chose the

'reasonable man [in the declarant's position]' test over a purely subjective test because it

thought that the declarant's unavailability to testify at trial almost always would foreclose

---

[7] At least one state court has adopted this approach. *See State v. Kiewert*, 605 A.2d 1031, 1035 (N.H. 1992) ("A reasonable declarant would recognize the disserving effect of a confession. There is no evidence in the record of the declarant's subjective state of mind mandating a contrary result."); *State v. Woodman*, 480 A.2d 169, 171 (N.H. 1984) ("[T]he Federal rules' inclusion of an objective test does not preclude courts from making an inquiry into the declarant's subjective state of mind. If the declarant does not believe the statement to be against his interest, the rationale for the exception fails." (quotations omitted)).

judicial determination of his state of mind at the time he made the statement." Tague, *supra*, at 935.[8]

This court's cases have applied the reasonable person standard when evidence of the declarant's actual knowledge as to whether the statement is against penal interest was seemingly lacking. *See Smalls*, 605 F.3d at 786 (finding the declarant made statements against his penal interest because the statements were "sufficiently against [the declarant's] penal interest such that no reasonable person would say those things without believing them to be true," and "[u]nder the circumstances presented, a reasonable person would not falsely admit to participating in [the victim's] murder aware of the possibility, however slight, that such admission could subject him to criminal prosecution and punishment"); *United States v. Lopez*, 777 F.2d 543, 554 (10th Cir. 1985) ("We believe that [the declarant's] statements tended to shift criminal liability from [the defendant] to himself to an extent that a reasonable man in his position would not have made the statements unless he believed them to be true.").

---

[8] *See* Cronan, *supra*, at 13 ("Because of the declarant's unavailability, conclusive proof of actual awareness is often impossible. Therefore, courts have looked at the surrounding circumstances to determine whether a reasonable declarant knew and understood the ramifications of the statement."); Jefferson, *supra*, at 22-23 ("[S]ince the circumstances surrounding the making of the declaration seldom give any indication of the actual state of mind of the declarant, it would seem that if . . . a reasonable man would have had the belief, the declaration will be received unless there is a finding that the declarant did not believe the declaration to be against interest."); Weissenberger, *supra*, at 1120 ("Since it is impossible to read a person's mind, Rule 804(b)(3) states the requirement that the declarant knew and understood the ramifications of the statement as an objective test: Would a 'reasonable man in his position' have made the statement if it were untrue?"); Note, *Declarations Against Penal Interest, supra*, at 163-65 (explaining the reasonable person standard was favored because of the difficulty in determining the declarant's actual state of mind).

\*　　\*　　\*

In sum, under Rule 804(b)(3)(A), if proof establishes the declarant's actual state of mind as to whether the statement is against penal interest, courts should consider that evidence as part of "in the declarant's position" to determine whether the hearsay is admissible.[9]  If, however, the declarant's state of mind on the against-interest question has not been proved, courts should consider whether "a reasonable person in the declarant's position" would believe the statement is against his or her interest.[10]

---

[9] If the declarant does not believe the statement is against his or her interest, then the statement generally cannot be admitted, regardless of what a reasonable person may believe.  If the declarant believes the statement is against his or her interest, the statement can qualify for admission, regardless of what a reasonable person may believe.  At least one out-of-circuit case, however, holds otherwise. *See United States v. Satterfield*, 572 F.2d 687, 691 n.1 (9th Cir. 1978) ("The test under Rule 804(b)(3) involves the perception of a reasonable person in [the declarant's] position, not of [the declarant] himself.  [The declarant's] statements of concern about jeopardizing his appeal are therefore irrelevant to whether the statement is a statement against penal interest within the meaning of the Rule . . . .").  At least one commentator has called *Satterfield*'s analysis "wrong."  Tague, *supra*, at 936.

[10] Considering evidence of the declarant's actual knowledge of the self-inculpatory character of the statement as part of Rule 804(b)(3)(A)'s "in the declarant's position" is a sensible way of reconciling this evidence with the language and purpose of the rule.  But we can think of two alternatives within the Federal Rules of Evidence to handle evidence of the declarant's actual knowledge.

The first would be to consider such evidence as part of Rule 804(b)(3)(B)'s corroboration analysis.  But that would eliminate the possibility of admitting a statement when a reasonable person would not believe the statement is incriminating but the evidence shows the declarant actually believed it was.  If the evidence of actual knowledge is confined to the corroboration analysis, the statement will be excluded under Rule 804(b)(3)(A) even though it may comfortably fit the rationale for the statement against interest rule.  Further, Rule 804(b)(3)(B) only takes effect during a "criminal case . . . that tends to expose the declarant to criminal liability."  Fed. R. Evid. 804(b)(3)(B).  In all other cases, then, the consideration of the declarant's actual state of mind would be lost.

- 19 -

c. *Application to this case*

We first consider whether there was evidence as to Mr. Farris's knowledge that the statement about the ammunition was against his penal interest. The trial record suggests Mr. Farris may not have believed his declaration was against his interest because he did not know it is a crime for an illegal-drug user to possess ammunition. Mr. Farris's attorney indicated, for example, "Mr. Farris probably didn't" know of § 922(g)(3). ROA, Vol. III at 561. Further, the Government represented Mr. Farris said he had not done anything illegal or wrong. *Id.* at 575. But it is unclear whether Mr. Farris was referring to his possession of the ammunition, the drugs, or both. And the district court did not make any findings on Mr. Farris's actual knowledge. We therefore do not believe there is enough evidence of Mr. Farris's actual state of mind to review the exclusion of his statement on this ground.[11]

We thus turn to the reasonable person analysis without the benefit of having conclusive evidence of Mr. Farris's actual knowledge. Applying the reasonable person standard, we must determine whether the district court abused its discretion in

---

A second alternative would be to (1) interpret Rule 804(b)(3) as a purely objective standard that does not allow consideration of the declarant's state of mind, and (2) determine whether the statement should be admitted under the Rule 807 residual exception. The "circumstantial guarantee[] of trustworthiness" under Rule 807(a)(1) would stem from the statement's fit with the rationale for the statement against interest hearsay exception. Resort to the residual exception is not necessary, however, when the declarant's actual knowledge can be considered as part of "in the declarant's position" in Rule 804(b)(3)(A).

[11] In any case, because we conclude the district court did not abuse its discretion in holding a reasonable person would not have believed the statement here was self-inculpatory, our disposition would be the same even if we thought Mr. Farris did not believe his declaration was against his penal interest.

- 20 -

determining "a reasonable person in Mr. Farris' position would have [no] idea that his status as a drug user would have disabled him under federal law from possessing ammunition." *Id.* at 783. The district judge said 18 U.S.C. § 922(g)(3) charges are rare, invoking his experiences as a prosecutor and judge. The judge also noted defense counsel was himself unaware of this criminal charge.

The district court did not abuse its discretion. Although the district judge's and defense counsel's personal experiences and knowledge about the rarity of § 922(g)(3) charges may not be a strong foundation to draw broad conclusions about a reasonable person's beliefs, Mr. Lozado bears the burden of showing the statement was against penal interest. *Porter*, 881 F.2d at 882. He has pointed to nothing demonstrating the district court erred in finding that § 922(g)(3) charges are infrequent or that a reasonable person in Mr. Farris's position would otherwise have known the statement would be against his interest. *See United States v. Burchard*, 580 F.3d 341, 355 (6th Cir. 2009) (Gibbons, J., concurring) ("In my experience, cases under § 922(g)(3) are infrequently prosecuted. . . ."); *United States v. Mitchell*, 175 F. App'x 524, 527 (3d Cir. 2006) (unpublished) (recognizing the infrequent prosecution of convicted felons for possessing ammunition is relevant in determining the self-inculpatory nature of a hearsay statement); *United States v. Palumbo*, 639 F.2d 123, 128 (3d Cir. 1981) (rejecting the admission of a statement that "technically . . . could have been used to support" a conviction against the declarant, but which was not the type of statement that "so far tended to subject [the declarant] to criminal liability that a reasonable person in [her] position would not have

made the statement unless [s]he believed it to be true" (quotations and alteration

omitted)).[12]

For these reasons, we affirm the district court's ruling that Mr. Farris's statement

was not against his penal interest.

2. **Corroborating Circumstances**

Even if Mr. Farris's statement had been against his penal interest, we would

nevertheless affirm because, as the district court determined, Mr. Lozado has not shown

the circumstances sufficiently corroborated the statement.

Rule 804(b)(3)(B) states that if a hearsay statement would expose an unavailable

declarant to criminal liability, its admission must be supported by "corroborating

circumstances that clearly indicate its trustworthiness."  Fed. R. Evid. 804(b)(3)(B).

"[T]he inference of trustworthiness from the proffered 'corroborating circumstances'

must be strong, not merely allowable."  *United States v. Salvador*, 820 F.2d 558, 561 (2d

Cir. 1987).  This "is not an insignificant hurdle," *United States v. Barrett*, 539 F.2d 244,

---

[12] Mr. Lozado cites *United States v. Aispuro-Angulo*, 986 F.2d 1430 (10th Cir. 1993) (unpublished table opinion), to argue the likelihood of prosecution is irrelevant; rather, if prosecution is possible at all, then a statement is against a declarant's penal interest.  In *Aispuro-Angulo*, we determined a hearsay statement was sufficiently against the declarant's penal interest because it "potentially may be used to convict [the declarant]."  *Id.* at *2.  The declarant in that case, however, had admitted to possessing cocaine, *id.* at *1, which a reasonable person (and likely the declarant, too) would understand to have a high likelihood of prosecution.

Indeed, *Aispuro-Angulo* emphasized a reasonable person in the declarant's position must have a belief in the possibility of prosecution, even if that possibility is slight:  "We do not think that a reasonable man would falsely admit the commission of a serious crime . . . , knowing that there was a chance, even if slight, that this admission could be used to convict him and subject him to such severe penalties."  *Id.* at *2 (quotations omitted).

253 (1st Cir. 1976), though "[t]he court does not have to conclude that the statements sought to be admitted were surely true, for it is the role of the jury—not the court—to assess the credibility of witness testimony," *United States v. Doyle*, 130 F.3d 523, 543 (2d Cir. 1997); *see also United States v. Garcia*, 986 F.2d 1135, 1141 (7th Cir. 1993) ("The district court must find only that sufficient corroborating circumstances exist and then permit the jury to make the ultimate determination concerning the truth of the statements.").

Neither Rule 804(b)(3)(B) nor the advisory committee notes defines the nature of "corroborating circumstances," apart from mentioning that "[t]he requirement of corroboration should be construed in such a manner as to effectuate its purpose of circumventing fabrication." Fed. R. Evid. 804 advisory committee notes; *see* 2 McCormick on Evidence § 319 (Kenneth S. Broun ed., 6th ed. 2006) ("Both the proper role for, and definition of, corroboration for statements against interest is almost hopelessly confused."). Corroboration of the trustworthiness of the statement could mean consideration of (1) the declarant's credibility, (2) whether evidence supports or contradicts the statement, or (3) both. *See Salvador*, 820 F.2d at 561.

The Tenth Circuit has not squarely addressed how a statement must be corroborated. Other circuits have expressed varying views. *See United States v. Henderson*, 736 F.3d 1128, 1131 (7th Cir. 2013) (stating "corroboration of the content of the hearsay statement may indicate that the statement is trustworthy"); *United States v. Price*, 134 F.3d 340, 347 (6th Cir. 1998) (stating the Rule "does not require that the information within the statement be clearly corroborated; it requires only that there be

- 23 -

corroborating circumstances which clearly indicate the trustworthiness of the statement, itself" (emphasis removed)); *Salvador*, 820 F.2d at 562 (requiring corroboration of both the declarant's credibility and the truth of the statement); *United States v. Brainard*, 690 F.2d 1117, 1125 (4th Cir. 1982) (concluding the Rule "requires not a determination that the declarant is credible, but a finding that the circumstances clearly indicate that the statement was not fabricated"); *see also* Tague, *supra*, at 946-53, 958-59 (stating the Rule does not explain what needs to be corroborated and federal courts have struggled with the test).

Although we think the declarant's credibility and the circumstances of the statement bearing on its truthfulness can both be considerations, we do not need to decide what specifically must be used to corroborate because there were (a) no corroborating circumstances of any kind that clearly indicated the trustworthiness of Mr. Farris's statement. We also note two circumstances that counsel against the trustworthiness of the statement: (b) the close relationship between Mr. Farris and Mr. Lozado and (c) the inconsistencies in Mr. Farris's statement.

a. *No additional evidence*

First, no evidence, apart from Mr. Farris's statement, suggested the ammunition in the car belonged to him. Although Mr. Farris's paystubs corroborated his claimed ownership of the drugs in the shorts, no analogous circumstances corroborated his ownership of the ammunition. Evidence that other people used Mr. Lozado's car did not corroborate Mr. Farris's statement that he had access to the car or that he owned the ammunition in the car.

The police officers found the ammunition in Mr. Lozado's car, not in Mr. Farris's home or in his shorts. *See United States v. Perez*, 963 F.2d 314, 315-16 (10th Cir. 1992) (finding an insufficient showing of corroborating circumstances to verify a declarant's statement he owned drugs found in the defendant's storage unit because the fact an access card for the storage unit had been found in the declarant's home did not necessarily mean the declarant owned the drugs). Further, Mr. Lozado's own statement claiming ownership of the ammunition linked himself, not Mr. Farris, to the ammunition. *See id.* (finding an insufficient showing of corroborating circumstances because police found the defendant's—not the declarant's—fingerprints on jars containing the drugs, and similar jars were found in the defendant's residence).

b. *Close relationship*

Second, Mr. Farris's statement is suspect because he is Mr. Lozado's brother-in-law, which provided him with a motive to help Mr. Lozado. A close relationship between the declarant and the defendant can damage the trustworthiness of a statement. *See Porter*, 881 F.2d at 883 (holding the close relationship between the declarant and the defendant supported the district court's determination that there were insufficient corroborating circumstances clearly indicating the trustworthiness of the declarant's statement); *see also United States v. Jones*, 124 F.3d 781, 786 (6th Cir. 1997) ("In regard to trustworthiness, this court has found that statements from a declarant attempting to exculpate a defendant with whom the declarant has a close relationship must be closely scrutinized."); *Garcia*, 986 F.2d at 1140 ("[I]f the two involved parties do not have a close relationship, one important corroborating circumstance exists.").

- 25 -

c. *Inconsistencies*

Third, Mr. Farris's statement contained several inconsistencies that undermined his credibility and the probative value of his statement. *See Doyle*, 130 F.3d at 544. The inconsistencies here were not "relatively minor." *Garcia*, 986 F.2d at 1140. Mr. Farris reported 40 to 50 rounds of ammunition in the car, when only ten were found. He also claimed he had just recently purchased the ammunition. But when asked why, if he had just purchased it, the ammunition was not in a box, Mr. Farris changed his story. He stated he had both loose and boxed ammunition, and the former was in Mr. Lozado's car. Mr. Farris also described the bullets in the car as being the same as the bullets in his shorts, but they were not the same, as Mr. Lozado acknowledges. The bullets were different colors, made by different manufacturers, and different calibers.

\*     \*     \*

For these reasons, we affirm the district court's holding there were insufficient circumstances corroborating Mr. Farris's claim the ammunition belonged to him.

III. **CONCLUSION**

For the foregoing reasons, we affirm the district court's judgment of conviction.